# EXHIBIT 19

## DECLARATION OF BRIAN A. PIFER

1.  I, Brian A. Pifer, have served as the Director of the Office of Field Operations within the Department of Labor's Office of Labor-Management Standards ("OLMS") since July 1, 2020. OLMS has responsibility under the Labor-Management Reporting and Disclosure Act, 29 U.S.C. 481 *et seq.* ("LMRDA") for investigating alleged violations of the LMRDA and for considering and formulating guidelines and policies concerning this Act and its interpretive regulations.

2.  Prior to holding this position, I served as the Chief of the Division of Enforcement ("DOE") from January 2019 through June 2020. As part of my duties, I supervised DOE investigators in the OLMS National Office, who review and evaluate the investigations, provide guidance to field investigators, and serve as liaisons between field investigators and the Office of the Solicitor.

3.  Prior to becoming the Chief of DOE, I served as a District Director for 11 years. My responsibilities included supervising investigations involving Title IV of the LMRDA within my specific jurisdiction.

4.  As part of my current duties, under the direction of the Deputy Director and Acting Director of OLMS, I am responsible for enforcing civil and criminal provisions of the LMRDA, including overseeing OLMS investigations of election complaints on behalf of the Secretary of Labor under the LMRDA.

5.  I supervise the employees conducting the field office enforcement operations of OLMS, who include regional directors, district directors, supervisory investigators, and field investigators. I work closely with the Chief of the Division of Enforcement ("DOE") who supervises DOE investigators in the OLMS National Office.

6.  I am also responsible for coordinating enforcement matters with the Office of the Solicitor and seeking legal advice from the Office of the Solicitor regarding whether the evidence uncovered during an investigation establishes probable cause to believe that a violation of the LMRDA occurred that may have affected the outcome of an election.

7.  Given my responsibilities, I am familiar with the process undertaken by OLMS to investigate a complaint through to a final decision. Once a complaint is filed with OLMS under the LMRDA, the field investigator, supervisory investigator, and district director are responsible for determining whether the complaint was properly filed, identifying the potential violations of the LMRDA that are stated in the allegations of the complaint, and gathering evidence that is relevant to the allegations of the complaint and the potential violations. The case opening memorandum, drafted by the assigned field investigator and submitted to field managers for review and approval, lists all of the allegations contained in the complaint that must be investigated. The field investigator, in periodic consultation with field managers and an assigned DOE investigator, gathers and analyzes evidence

necessary to resolve allegations and determine whether any violation occurred that may have affected the outcome of the election.

8.  Field investigators engage in an interactive process with their field managers and an assigned DOE investigator. The DOE investigator reviews the case file to determine if more evidence is needed and to explore further avenues of investigation. The field investigator and the DOE investigator may request assistance from investigators in other offices when evidence is located in that region, or from investigators with expertise in analyzing certain types of evidence. The internal communications between field investigators and the DOE investigator are an important deliberative step in the process of making a final decision on the complaint. They serve to strengthen the investigation's fact-gathering that will ultimately serve as the basis of any final decisions that either there was a finding of probable cause that a violation occurred or, conversely, a finding that there was no violation.

9.  Once the initial investigation phase is complete, the field investigator prepares a report of investigation ("ROI"), outlining his/her/their assessment of whether the evidence obtained would or would not support a possible finding of probable cause that a violation of the LMRDA occurred. The ROI includes supporting exhibits, along with an analysis and recommendation memorandum to the field investigator's supervisor, in which the investigator provides a recommendation for a particular course of action (e.g., to close the case or to find a violation that may have affected election outcome). The receipt of the ROI prompts several further actions in the deliberative process. The supervisor reviews the ROI, the exhibits, and the memorandum and sends them to the Chief of the DOE, along with a transmittal memorandum in which he/she/their summarizes the investigator's findings and whether he/she/their agrees or disagrees with the field investigator's recommendation. The Chief of the DOE in turn provides a copy of these deliberative assessments to the Civil Rights and Labor-Management Division ("CRLM") of the Office of the Solicitor, who reviews and provides legal analysis.

10. Prior to referring the ROI to the Chief of DOE, the field office, depending on its findings, may issue to the union a summary of violations letter, which is a preliminary, pre-decisional assessment that the evidence supports a finding of probable cause that a violation occurred. The letter states that it is only a preliminary determination and affords the union an opportunity to provide additional evidence or information.

11. Upon receipt of the ROI, including the supporting exhibits, the analysis and recommendation memorandum, and transmittal memorandum, the assigned DOE investigator coordinates an initial case meeting with attorneys from CRLM, Chief of the DOE, Director of the Office of Field Operations, field investigator, field investigator's supervisor, district director, and regional director. At this case meeting, those assembled analyze and assess the evidence and deliberate concerning the issue of whether there is probable cause that any LMRDA violation occurred that may have affected the outcome of the election. Their objective is to reach a preliminary determination that the evidence gathered during the investigation either does or does not support a finding of probable cause, or that additional investigation is necessary. Prior to this case meeting, the DOE

2

investigator prepares a case meeting agenda summarizing potential violations and supporting evidence, which will guide the group's deliberations.

12. If a case meeting results in a preliminary determination that the evidence supports a finding of probable cause that a violation occurred, DOE will ask the field office to issue to the union a summary of violations letter if the field office has not already issued one.

13. If any new evidence or information received from the union does not change the preliminary determination reached at the case meeting, that the evidence gathered supports a finding of probable cause that a violation occurred, the Office of the Solicitor prepares an in-depth analysis of the complaint, the investigation, the facts and the applicable law. During this phase of the deliberations, questions may arise between OLMS and the Office of the Solicitor regarding the supporting facts, their interpretation and significance of those facts, and whether further evidence is needed to reach a finding of probable cause to believe that a violation occurred. During this time, OLMS may continue to negotiate with the union in an effort to reach a voluntary compliance agreement for OLMS to supervise a remedial election. OLMS also continues to consider any and all additional evidence or information provided by the union or uncovered from further investigation.

14. The aforementioned deliberations regarding whether there is probable cause may continue until the Solicitor of Labor makes a final decision concerning OLMS's preliminary determination that there is probable cause to believe that a violation of the LMRDA occurred; that the violation may have affected the outcome of the election; that the violation has not been remedied; and that the LMRDA therefore requires filing suit on behalf of the Secretary of Labor. Typically, shortly prior to the date by which the complaint must be filed in district court, OLMS contacts the union again to see whether an agreement could be reached. If the parties sign a voluntary compliance agreement, no litigation documents are filed.

15. Throughout the process -- starting from the initial deliberations of the field investigators included in the case opening memorandum and communications with the field managers and the DOE investigator, to the deliberation with the Director of the Office of Field Operations and the Chief of DOE, to those involving the Director and Deputy Director of OLMS -- OLMS employees and the attorneys from the Office of the Solicitor raise questions, express views, and come to preliminary conclusions before coming to a final recommendation on probable cause. Disclosure of such communications, including questions and preliminary conclusions, would interfere with and chill the free flow of ideas, opinions and assessments within OLMS and between OLMS and the Office of the Solicitor, and would discourage candid discussions that are a necessary part of the agency's deliberative process. These communications also include privileged communications between attorneys working in the Office of the Solicitor and their client, OLMS.

16. I am personally familiar with the process that took place after OLMS received a complaint that started the investigation in this case. Upon receipt of a complaint from

3

Floyd Bryan on November 27, 2018, Senior Investigator Regina Diaz and Supervisory Investigator Kenric Michel, with the assistance of DOE Investigator Tracy Shanker, began the Agency's deliberative process, assessing which provisions of the LMRDA were implicated by Mr. Bryan's complaint and determining how to proceed in the investigation of his allegations. These initial deliberations are reflected in documents including the case opening memorandum and drafts thereof authored by Regina Diaz. Her initial assessments were included in initial communications with CRLM attorneys, including Radine Legum, Jeffrey Lupardo, and Eleanore Simms.

17. As Regina Diaz investigated the case, she gathered facts for the ROI, but also further considered how these fact findings corresponded to the potential alleged violations of the LMRDA and included these assessments in her communications with her investigative team and supervisors. Her deliberative assessments were included in several drafts of the ROI; the final ROI reviewed by Kenric Michel, which was dated January 30, 2019; multiple drafts of the analysis and recommendation memorandum that was reviewed by Kenric Michel (and the final version dated January 31, 2019); Kenric Michel's transmittal memorandum on January 31, 2019; and various drafts of the summary of violations letter that were prepared to accompany the ROI, about which Ms. Diaz, Kenric Michel, District Director Bruce Edgington, and Tracy Shanker deliberated.

18. On February 6, 2019, OLMS employees and attorneys from CRLM held a case meeting to analyze the evidence, consider the aforementioned deliberative assessments of the investigative team, and deliberate concerning the issue of whether there was probable cause that any LMRDA violation occurred that may have affected the outcome of the election. The group of OLMS employees who participated included Steve Willertz, myself, Tracy Shanker, Regional Director Jena de Mers Raney, Bruce Edgington, Kenric Michel, and Regina Diaz. Attorneys from CRLM also participated, including Eleanore Simms, Tambra Leonard, and Austin Case. Following this meeting, a final version of the summary of violations letter was sent to ILWU's counsel on February 6, 2019. This letter noted that it was not a final determination that violations had occurred.

19. Upon receipt of this letter, ILWU counsel requested an in-person meeting at which to present additional evidence and seek to resolve the preliminary determinations raised in the summary of violations letter. This meeting was scheduled for March 8, 2019.

20. Following the case meeting, attorneys from CRLM continued to review the evidence gathered as it related to the violations and to provide advice to OLMS. They also deliberated further with Tracy Shanker, Steve Willertz, and myself regarding factual and legal issues relating to the investigation and potential violations of the LMRDA in the course of preparing an in-depth analysis of the violations alleged, the facts gathered in the investigation, and the applicable law. In addition, in advance of the scheduled March 8, 2019 meeting with ILWU and its counsel, the same group of personnel that participated in the February 6, 2019 case meeting continued to further analyze and assess the evidence and deliberate concerning the issue of probable cause.

21. From the time of the March 8, 2019 meeting with ILWU, OLMS and attorneys from CRLM continued their deliberations concerning the probable cause determination. This included communications with the U.S. Attorney's office. On March 22, 2019, Beverly Dankowitz, Associate Solicitor for Civil Rights and Labor-Management, sent an analysis, which incorporated the deliberations of OLMS and the Office of the Solicitor and included a recommendation that the Secretary of Labor file a complaint in this matter, to Katherine Bissell, Deputy Solicitor for Regional Enforcement, who reviewed it and ultimately submitted it for approval to the Solicitor of Labor, Kate S. O'Scannlain. On April 16, 2019, the Solicitor of Labor sent the Memorandum for the Secretary of Labor communicating her determination that there was probable cause to determine that violations of LMRDA sections 401(e) and (c) had occurred that may have affected the outcome of the September 6, 2018, officer election and intention to file suit.

22. The agency has invoked the deliberative process privilege to withhold records or portions of records that are internal, deliberative, and pre-decisional and that are an integral part of the agency's decision-making process. Specifically, the agency has withheld documents, in full and in part, because they reflect the internal discussions, communications, opinions, assessments and recommendations of OLMS personnel during the administrative investigation, as well as input, assessments and recommendations by the Office of the Solicitor, concerning ILWU's conduct during the 2018 election. All of these deliberations were part of the agency's process for arriving at a decision on the LMRDA complaint on April 16, 2019. The withheld documents (and portions of withheld documents) consist of memoranda, reports, and internal emails generated in the course of the OLMS investigation into the complaint against ILWU. They include the case opening memorandum, the report of investigation, the review of records memoranda, the analysis and recommendation memorandum, the transmittal memorandum, and internal email discussions. These documents concern input into the written material prepared in the probable cause investigation, discussions concerning the sufficiency and assessment of the factual record, and discussions of the strategy and approaches to the gathering of evidence. To disclose this information would reveal internal deliberations among government personnel, namely, discussions of internal recommendations and opinions leading to the final decision-making. Disclosure would jeopardize the candid and comprehensive discussions that are essential for efficient and effective agency decision-making. In addition, the agency's deliberations in the ILWU matter, if revealed, would jeopardize the agency's decision-making with respect to other similar matters.

23. The agency has attempted to release all reasonably segregable material in materials that it has withheld as part of the deliberative process relating to the probable cause determination for ILWU. The agency has produced thirty-two exhibits to the ROI without redactions, including all reports of interviews and five memoranda to the file notwithstanding its assertion of privilege. with respect to the three memoranda containing reviews of election records in light of the allegations (the review of records memorandum prepared by Regina Diaz, finalized on January 30, 2018, the review of records memorandum prepared by Robert Rennard, finalized on February 4, 2019, and the review of records memorandum prepared by Regina Diaz, last draft dated August 26, 2019), the agency has disclosed the segregable facts.

24. I am aware that the agency has created a log of its privileged documents, which it has revised multiple times after conducting subsequent reviews of its privileged documents. On November 15, 2020, the agency provided an initial privilege log to ILWU. On January 24, 2020 the agency produced a list of agency staff members (and corresponding job titles) for individuals listed on its privilege log. On January 27, 2019, the agency gave a revised privilege log to ILWU. On March 5, 2020, the agency produced 94 documents, in whole or in part (comprising 463 pages), as part of its re-review of documents withheld under the deliberative process privilege. On March 30, 2020, the agency produced another iteration of its privilege log based on this re-review and production. After that time, the agency conducted another review of its privileged documents and conducted rolling document productions on May 7, 2020 (107 documents; 260 pages), May 22, 2020 (223 documents; 596 pages), June 5, 2020 (155 documents; 369 pages) and June 29, 2020 (77 documents; 132 pages), and July 10, 2020 (21 documents; 50 pages), and provided a new iteration of its privilege log on July 10, 2020.

25. Pursuant to Title 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct.

        Executed on this 10th day of July, 2020, at City of Washington, District of Columbia.

        Brian A. Pifer, Director of the Office of
Field Operations
Office of Labor - Management Standards
U.S. Department of Labor