# EXHIBIT 22

```
 1                UNITED STATES DISTRICT COURT

 2               NORTHERN DISTRICT OF CALIFORNIA

 3                         ---o0o---

 4

 5    EUGENE SCALIA,                )
                                     )
 6              Plaintiff,           )
                                     ) Case No.
 7        vs.                        ) 4:19-cv-02103-DMR
                                     )
 8    INTERNATIONAL LONGSHORE        )
      AND WAREHOUSE UNION,           )
 9                                   )
                Defendants._ _)
10

11

12

13           VIDEO-CONFERENCED DEPOSITION OF

14              PERSON MOST KNOWLEDGEABLE

15                    BRIAN PIFER,

16                    (via Zoom)

17

18

19

20        Tuesday, July 14th, 2020 • 9:08 a.m.

21

22

23    Reported By:  Tamra Elaine Keen
      CCRR, CLR, RPR, CSR No. 5404
24

25    Job No. 10070152
```

1           Did you review all of the documents in this
2    case that have been withheld on deliberative process
3    grounds?
4        A.   No.
5        Q.   All right.
6           Did you review all of the documents in this
7    case that were partially redacted on deliberative
8    process grounds?
9        A.   No.
10       Q.   All right.  We'll come back to that.
11          So after reviewing this document, did this
12   refresh your recollection that the Department of Labor
13   received dues records for SINTRAPORSPA for May, June,
14   July and August?
15       A.   For SINTRAPORSPA?
16       Q.   Yes.
17          Is that correct, you received four months of
18   dues records for SINTRAPORSPA?
19       A.   It says that May through August 2018.
20       Q.   All right.
21          And that's correct as far as you know, right?
22       A.   Yes.
23       Q.   All right.
24          If you look around the third page of this
25   document, which is USA 11393, at the bottom.

1    Enforcement Chief, the Director of the Office of Field
2    Operations, as well as the Deputy Director, along with
3    all of the Solicitors that work in CRLM.
4         Q.   Was this decision made in a meeting, in
5    person, on the phone, via email?  What was the -- the
6    mode through which the decision was made?
7         A.   All of the above.
8         Q.   Okay.
9         A.   It's a process.
10        Q.   Okay.
11             And in making the decision, did the
12   decision-makers adopt any previous recommendation of
13   anybody within the agency?
14        A.   Ultimately, yes.
15        Q.   Okay.
16             And what recommendation or recommendations
17   were adopted?
18             MR. BRAKEBILL:  I'm going to object to the
19   extent this answer asks for items of the recommendations
20   and deliberative assessment during the deliberative
21   process.  The deliberative decisions.
22             MS. MORTON:  Are you instructing the witness
23   not to answer?
24             MR. BRAKEBILL:  Why don't you re-ask your
25   question?

Brian Pifer

Scalia vs.
ILWU

```
 1                MS. MORTON:  Sure.
 2       Q.   In making the decision -- and by "decision", I
 3  mean the decision that my client violated the LMRDA --
 4  I'm sorry, I'm asking the wrong question.
 5            What recommendation or recommendations were
 6  adopted when the decision-makers, who you've identified,
 7  decided that my clients violated the LMRDA?
 8            MR. BRAKEBILL:  So let me ask you a
 9  clarification, so I can understand the specific contours
10  of the question.
11            Are you referring to the ultimate
12  recommendation, or are you asking what recommendations,
13  one way or the other, were made prior to that ultimate
14  decision?
15            MS. MORTON:  Well, I asked the witness if, in
16  making the decision that my clients violated the LMRDA,
17  whether the decision-makers adopted any previous
18  recommendation of anybody within the agency.  And his
19  answer was, ultimately, yes.
20            So my question is -- my follow up question is:
21  What recommendation or recommendations were they
22  adopting?
23            MR. BRAKEBILL:  Right.  And I would instruct
24  the witness not to answer because that directly asks for
25  deliberative assessments made during the deliberative
```

```
 1     process.
 2            MS. MORTON:  Okay.
 3       Q.   Are you going to refuse to answer the question
 4     on the advice of your counsel?
 5       A.   Yes.
 6       Q.   Are you familiar with something called an
 7     "auxiliary investigation"?
 8       A.   I am.
 9            That is, essentially, when we request the
10     assistance of an office to obtain information relative
11     to the investigation that's outside the jurisdiction of
12     the controlling District Office.
13            So -- when you say "outside the jurisdiction
14     of the controlling District Office", does that refer to
15     physical geography?
16       A.   Yes.
17       Q.   Okay.
18            Now the principal investigator in this case
19     was Regina Diaz.
20            Is that correct?
21       A.   That is correct.
22       Q.   And Ms. Regina Diaz, in the context of
23     investigating this case, sought permission to travel to
24     Panama to interview witnesses in connection with the
25     investigation.
```

1    to voter eligibility under the ILWU Constitution during
2    the break?
3         A.   I did, and specifically I referenced the
4    appendix of the Constitution Rule No. 3, Eligible
5    Voters.
6         Q.   Okay.
7         A.   Would you like me to read that?
8         Q.   Sure.
9         A.   All members in good standing of any affiliate
10   of the ILWU shall be eligible to vote in this election
11   in accordance with such affiliate's established rules
12   defining membership in good standing that conforms with
13   the international Constitution.  A member in good
14   standing shall be defined as a member having the same
15   rights and responsibilities as any other member of such
16   ILWU affiliate.
17        Q.   Okay.
18             So this is a rule that you consulted during
19   our break?
20        A.   Correct.
21        Q.   Okay.
22             And what did that rule indicate to you with
23   regard to voter eligibility in the 2018 election?
24        A.   Voter eligibility is determined at the
25   affiliate level, as long as it does not -- it does not

```
 1      conflict with the international Constitution.
 2          Q.   Okay.
 3               And did you look at, during our break, the
 4      Constitution of the Panama Canal Pilots Union?
 5          A.   Are you referring to their bylaws?
 6          Q.   Yes, their bylaws, thank you.
 7          A.   I swear -- give me a moment?
 8          Q.   Sure.
 9          A.   I have them in front of me right now.
10          Q.   So my question was:  Did you review them
11      during our break to determine what the requirements for
12      voting instructions were for the 2018 ILWU election?
13          A.   I was at the time focusing on the Constitution
14      and am trying to look that up to see if it does in fact
15      say anything at all in here right now --
16          Q.   Okay.  Okay.
17          A.   -- regarding voting instructions.
18          Q.   All right.
19               You didn't look at this during our break?
20          A.   Right.
21          Q.   Okay.
22               And did you look at the SIN -- any
23      SINTRAPORSPA governing document during our break
24      regarding voting instructions?
25          A.   That's what I was just referring to.
```

```
 1              All right.  Now I need to tie up a few loose
 2   ends here.
 3              I need you to look with me, please, at Exhibit
 4   14 to your deposition.  It should be available in the
 5   chat.  This is the memo that we were looking at earlier,
 6   which includes among other things a discussion of
 7   analysis of the lists and ballots.
 8              Just let me know when you have it in front of
 9   you?
10              MR. TISA:  Let me know if you need me to
11   repost that link again.
12   BY MS. MORTON:
13        Q.   Are you able to find it or would you like it
14   to be reposted, Mr. Pifer?
15        A.   Is it No. 11391?
16        Q.   It is, um-hmm.
17        A.   Okay.  Okay, I have it.
18        Q.   Okay, very good.  So there's some material
19   redacted in this document.
20             There's a box and it says "DP" in several
21   places.
22             Do you see that?
23        A.   Yes.
24        Q.   What is was the issue that was being
25   deliberated over in this document?
```

1           MR. BRAKEBILL:  I'll renew my objection from
2   earlier, to the extent that revealing -- in answering
3   this question would reveal any deliberative assessments
4   leading to a final decision, then you should not answer
5   the question to that extent.
6           MS. MORTON:  And just so my question is clear,
7   I'm not asking you for the content of those
8   deliberations or the actual analysis.
9           I'm just asking what the issue was that was
10  being deliberated over.
11          MR. BRAKEBILL:  Right.  Understood.
12          Just a caution, to the extent that revealing
13  that issue would implicitly reveal any deliberative
14  assessments, you shouldn't answer it.
15          THE WITNESS:  So with that, I will decline to
16  answer that question.
17  BY MS. MORTON:
18      Q.  Are you able to answer that question without
19  revealing the deliberations themselves?
20      A.  I can't think of a way to answer that question
21  without doing precisely that.
22      Q.  Okay.  All right.
23          Now I asked you some questions previously
24  about who the individuals were who made the
25  determination that my client violated the LMRDA.  And

1           CERTIFICATE OF REPORTER

2           I, Tamra Elaine Keen, CCRR, CLR, RPR,

3    CSR No. 5404, a Certified Shorthand Reporter, hereby

4    certify that the witness in the foregoing

5    video-conferenced deposition was by me duly sworn to

6    tell the truth, the whole truth and nothing but the

7    truth in the within-entitled cause;

8           That said video-conferenced deposition was

9    taken down in shorthand by me, a disinterested person,

10   at the time and place therein stated, and that the

11   testimony of the said witness was thereafter reduced to

12   typewriting, by computer, under my direction and

13   supervision;

14           Further, that if the foregoing pertains to

15   the original transcript of a deposition in a federal

16   case, before completion of the proceedings, review of

17   the transcript [  ] was [ X ] was not requested.

18           I further certify that I am not of counsel or

19   attorney for either or any of the parties to the said

20   deposition, nor in any way interested in the event of

21   this cause, and that I am not related to any of the

22   parties thereto.

23   Dated:  Thursday, July 30th, 2020

24   *Tamra Elaine Keen*
     _____

25   Tamra Elaine Keen, CCRR, CLR, RPR, CSR No. 5404