## SECOND DECLARATION OF BRIAN A. PIFER

1. I, Brian A. Pifer, am the Director of the Office of Field Operations within the Department of Labor's ("the Department") Office of Labor-Management Standards ("OLMS"), the office responsible for investigating alleged violations of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. 481 *et seq.* ("LMRDA").

2. I make this declaration to supplement the declaration I executed on July 10, 2020 in connection with *Scalia v. International Longshore and Warehouse Union*, Case No. 4:19-cv-02103-DMR (N.D. Cal.).  My July 10, 2020 declaration concerned the Department of Labor's privilege log and the assertion of the deliberative process privilege in response to Defendant International Longshore and Warehouse Union's (ILWU) requests for production.

3. I am familiar with all of the types of documents withheld in this case through my work as a District Director for 11 years, the Chief of the Division of Enforcement from January 2019 to June 2020, and as the current Director of the Office of Field Operations. I have personal knowledge of many of the actual documents withheld in this case because of my involvement in the case as Chief of the Division of Enforcement and the Director of Office of Field Operations. Additionally, prior to executing my July 10, 2020 declaration, I reviewed a representative sample of the documents listed in the privilege log.

4. Paragraph 23 of my July 10, 2020 declaration notes that the agency disclosed the segregable facts from the election records memorandum prepared by OLMS Senior Investigator Regina Diaz, last draft dated August 26, 2019. This memorandum was drafted as part of the decision-making process that led to the filing of an amended complaint. OLMS received dues checkoff records from two employers of Panamanian members of ILWU late in OLMS' investigation of ILWU's election. The records were from two employers, covered multiple months and listed hundreds of employees that had dues deducted from their paychecks. OLMS continued to analyze this information after the Department of Justice filed suit against ILWU. Diaz drafted a memorandum concerning these records that was finalized on or about August 26, 2019 that contained her assessments and analysis of the records. The memorandum was sent to staff in OLMS' National Office and attorneys in the Civil Rights and Labor-Management Division, who further deliberated on the evidence and whether there was probable cause that an additional violation had occurred that was not included in the original complaint commencing the aforementioned lawsuit in the Northern District of California.

5. The Department's most recent privilege log notes that the Department has withheld an ECHO Issue Page. The Election Case Handling Organizer (ECHO) system is a tool that OLMS investigators and managers use when planning how to investigate union election complaints, processing those complaints and investigating the allegations in union election complaints. An ECHO Issue Page contains an investigator's identification of issues presented in the complaint and preliminary notes on the evidence relating to an allegation raised in the complaint.

6. The Department of Labor redacted, pursuant to the investigatory files privilege, a description of the ballot-counting method an OLMS' investigator used when reviewing election records kept by Global Election Services (GES). This information reveals one method used by OLMS to check the accuracy of union election results. This information would be helpful to an individual aiming to commit election fraud by reporting an inaccurate vote tally and attempting to avoid detection by OLMS.

7. The Department of Labor also withheld, pursuant to the investigatory files privilege, a case evaluation form outlining OLMS' case processing and investigative procedures. This form is a tool used to evaluate the field office's report of investigation and analysis & recommendation memorandum. It outlines the components of the investigation, including the types of inquiries that should be made by the investigator and the categories of individuals to be interviewed. Because the document serves as a mechanism for the agency to evaluate the effectiveness of its operations, disclosing it would reveal investigative processes and potentially chill the agency's long-standing self-evaluation methodology, which informs future investigations. Moreover, disclosing the types of data gathered on this form could be used to hinder the agency's law enforcement efforts in this, and future, law enforcement matters involving violations of the LMRDA's union officer election requirements.

8. In the process of preparing this declaration, it has come to my attention that Paragraph 24 of my declaration of July 10, 2020, contained minor errors relating to the dates and number of documents that DOL produced following the agency's March 30, 2020, production of its privilege log. That paragraph should state:

> After that time, the agency conducted another review of its privileged documents and conducted rolling document productions on May 8, 2020[1] (107 documents; 260 pages), May 22, 2020 (223 documents; 596 pages), June 8, 2020[2] (154 documents; 367 pages),[3] June 29, 2020 (77 documents; 132 pages), and July 10, 2020 (23 documents; 73 pages), and provided a new iteration of its privilege log on July 10, 2020.

Pursuant to Title 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 2nd day of September, 2020, at City of Washington, District of Columbia.

*Brian A. Pifer*
_____
Brian A. Pifer, Director of the Office of
Field Operations
Office of Labor-Management Standards
U.S. Department of Labor

---

[1] The previous declaration incorrectly listed this date as May 7, 2020.
[2] The previous declaration incorrectly listed this date as June 5, 2020.
[3] The previous declaration incorrectly listed these totals as 155 documents and 369 pages.