UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUGENE SCALIA,

           Plaintiff,

     v.

INTERNATIONAL LONGSHORE AND
WAREHOUSE UNION,

           Defendant.

Case No.  19-cv-02103-DMR

**ORDER ON MOTION TO COMPEL**

Re: Dkt. No. 97

On April 18, 2019, Plaintiff Eugene Scalia, in his official capacity as the Secretary of the U.S. Department of Labor ("DOL"), filed a complaint against Defendant International Longshore and Warehouse Union ("ILWU") under Title IV of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 481-83 ("LMRDA"). [Docket No. 1.] DOL filed an amended complaint on August 30, 2019. [Docket No. 28 ("FAC").] DOL seeks a judgment invalidating ILWU's September 2018 election of union officers and an order that ILWU conduct a new election for those positions. ILWU brings this motion to compel the Secretary to documents withheld under various privileges and the work product doctrine. [Docket Nos. 97 ("Mot."), 107 ("Reply").] DOL opposes. [Docket No. 104 ("Opp.").] The court held a hearing on September 24, 2020.

Upon considering the parties' briefing and oral arguments, the court grants in part and denies in part the motion to compel.

**I.     BACKGROUND**

The facts, claims, and defenses in this lawsuit are described in detail in the court's November 18, 2020 order (Docket No. 123) and are not repeated here. ILWU moves the court to compel the

production of 121 documents that have been withheld or redacted by DOL.  DOL responds that it properly withheld the documents under the deliberative process privilege, the investigative files privilege, attorney-client privilege, and/or the work product doctrine.

## II.    LEGAL STANDARD FOR MOTIONS TO COMPEL

Federal Rule of Civil Procedure 26 provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  "Rule 26(b) is liberally interpreted to permit wide-ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence."  *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998).  The party resisting discovery "has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections."  *Id*.

## III.    DISCUSSION

The documents at issue relate to DOL's investigation of ILWU following the complaint lodged against it.  ILWU argues that these documents are relevant to its defenses, particularly its unclean hands defense.[1]  The motion asserts that DOL improperly withheld the documents because it "(1) failed to have its agency head personally review documents it withheld or redacted on deliberative process grounds; (2) failed to identify a specific decision for which a withheld or redacted document was pre-decisional; (3) failed to produce segregable facts in pre-decisional documents, such as timelines; (4) withheld or redacted documents containing recommendations adopted by its final decision(s); (5) withheld or redacted on deliberative process grounds documents

---

[1] The defense asserts that a court is not required to void a union election "in the exceptional circumstances of this case in which an incumbent union faction intentionally violated the LMRDA election rules, lost the election, and then complained to the Secretary in an effort to undo the election results."  *See Marshall v. Local 1010, United Steelworkers*, 664 F.2d 144, 146 (7th Cir. 1981).

United States District Court
Northern District of California

that were not distributed but merely saved to a file; (6) improperly invoked an 'investigative files privilege' to withhold or redact documents; (7) improperly withheld documents under attorney-client privilege when no attorney authored or received them; and (8) improperly withheld on attorney work product grounds documents which it developed in the regular course of business." Mot. at 1.  Except for a limited objection regarding its investigative files, *see infra*, DOL does not object to production of the documents on the basis of relevance or proportionality.

### A. Deliberative Process Privilege

The deliberative process privilege protects "the decision making processes of government agencies" in order to "prevent injury to the quality of agency decisions."[2]  *N. L. R. B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-51 (1975) (internal quotation marks and citations omitted).  "The underlying premise of the privilege is that agency decision-making might be impaired if discussions within the agency were subject to public review, thereby discouraging 'frank discussion of legal or policy matters.'"  *In re McKesson Governmental Entities Average Wholesale Price Litig.*, 264 F.R.D. 595, 600 (N.D. Cal. 2009) (quoting *Sears*, 264 F.R.D. at 600).  The deliberative process privilege is not absolute, and even if the privilege applies, "a litigant may obtain discovery of protected material if the need for the documents outweighs the governmental interest in keeping the decision making process confidential."  *McKesson*, 264 F.R.D. at 601.  The Ninth Circuit has "defined the ambit of the deliberative process privilege . . . narrowly."  *Sierra Club, Inc. v. United States Fish & Wildlife Serv.*, 925 F.3d 1000, 1011 (9th Cir. 2019); *McKesson*, 264 F.R.D. at 600 ("The privilege 'must be strictly confined within the narrowest possible limits consistent with the logic of its principles.'") (quoting *K.L. v. Edgar*, 964 F. Supp. 1206, 1208 (N.D. Ill. 1997)).  The agency bears the burden of showing the privilege applies.  *Sierra Club, Inc.*, 925 F.3d at 1011.

---

[2] *Sears* addressed the applicability of Exemption 5 in a case brought under the Freedom for Information Act ("FOIA").   However, *Sears* noted that Congress adopted Exemption 5 in recognition of the executive privilege.   421 U.S. at 150 ("That Congress had the Government's executive privilege specifically in mind in adopting Exemption 5 is clear.").   The deliberative process privilege is one form of executive privilege.   *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997).   Thus, *Sear*'s analysis of executive privilege under Exemption 5 is applicable to this case.  *See California Native Plant Soc'y v. U.S. E.P.A.*, 251 F.R.D. 408, 411 n. 1 (N.D. Cal 2008) ("With minor exceptions, [Exemption 5] cases are generally applicable to the discovery context.").

United States District Court
Northern District of California

1

### 1.    Invocation of the Privilege

ILWU first argues that the deliberative privilege does not apply because DOL's agency head did not personally review the documents for which DOL asserts the privilege.  *See McKesson*, 264 F.R.D. at 601 ("Generally, the deliberative process privilege may be invoked only by the agency head after personally reviewing the documents for which the privilege is asserted.").

Brian Pifer, DOL's Director of the Office of Field Operations within the Office of Labor-Management Standards ("OLMS"), testified that he did not review each of the documents that DOL withheld based on the deliberative process privilege.  *See* Docket No. 98, Declaration of Tanya Smith ("Smith Decl."), Ex. 22, Deposition of Brian Pifer ("Pifer Depo.") at 74:1-9.  Instead, Pifer submitted a declaration that explains his familiarity with the OLMS investigative process.  *See* Docket No. 98, Declaration of Tanya Smith ("Smith Decl."), Ex. 19, First Declaration of Brian A. Pifer ("First Pifer Decl.") ¶¶ 7-15.  Pifer also details his personal knowledge of OLMS's deliberations in deciding whether to pursue litigation in this case and the documents relevant to those deliberations.  *Id.* ¶¶ 16-22.  Pifer testifies that he reviewed a representative sample of the documents withheld on the basis of the deliberative process privilege.  [Docket No. 104-1, Second Declaration of Brian A. Pifer ("Second Pifer Decl.") ¶ 3.]  DOL argues that Pifer's declarations adequately describe the grounds for asserting privilege and that review of each individual document is not required.  Opp. at 9 (citing *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 400, 402 (D.C. Cir. 1984)).

As noted by ILWU, the majority of DOL's authority on this point examines the state secrets privilege.  *See Kasza v. Browner*, 133 F.3d 1159, 1169 (9th Cir. 1998); *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 400, 402 (D.C. Cir. 1984); *Crater Corp. v. Lucent Techs., Inc.*, 423 F.3d 1260, 1266 (Fed. Cir. 2005); *Bareford v. Gen. Dynamics Corp.*, 973 F.2d 1138, 1141 (5th Cir. 1992).  However, the "prerequisites for formal invocation of [executive privileges] have been uniformly applied irrespective of the particular kind of executive claim advanced."  *United States v. O'Neill*, 619 F.2d 222, 226 (3d Cir. 1980) (quoting *Carter v. Carlson*, 56 F.R.D. 9, 10 (D.D.C. Aug. 16, 1972)); *see also Coastal Corp. v. Duncan*, 86 F.R.D. 514, 517 (D. Del. May 5, 1980) (citing cases).  Indeed, *McKesson*, which is ILWU's central case, relied on authority

discussing the states secret privilege.[3]  In any event, *McKesson* is readily distinguishable.  Although the court faulted the government for not explaining the basis of invoking the privilege for "each document," the agency head in that case had not submitted a declaration or privilege log at all.  *See* 264 F.R.D. at 602.  Here, DOL has submitted a privilege log as well as Pifer's detailed declaration.  Additionally, to the extent that *McKesson* stands for the proposition that the deliberative process privilege can only be invoked upon review of the specific document by the agency head, the Ninth Circuit has since disavowed that view with respect to the state secrets privilege, which is evaluated under the same invocation standard.  *See Kasza*, 133 F.3d at 1169 ("In a case such as this, the Secretary, once she has properly invoked the claim of privilege and adequately identified *categories* of privileged information, cannot reasonably be expected personally to explain why each item of information arguably responsive to a discovery request affects the national interest." (emphasis added)).

ILWU does not argue that Pifer's declaration is insufficient under *Kasza* or other similar authority.[4]  Accordingly, the court holds that Pifer's declaration properly invoked the deliberative process privilege, even though Pifer did not personally review every withheld document.

## 2.     Application of the Privilege

The deliberative process privilege applies only to documents that are both "pre-decisional" and "deliberative."  *Maricopa Audubon Soc. v. U.S. Forest Serv.*, 108 F.3d 1089, 1093 (9th Cir. 1997) ("*Maricopa II*").  A document is pre-decisional if it is "prepared in order to assist an agency decisionmaker in arriving at his decision, and may include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the

---

[3] *McKesson* cited *Coastal Corp.*, a case discussing the deliberative process privilege, which in turn relied on the seminal Supreme Court decision regarding invocation of privilege over military and state secrets.  *See United States v. Reynolds*, 345 U.S. 1, 7 (1953) ("There must be formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer.").

[4] Although the court holds that an agency head does not need to personally review every document in order to invoke the deliberative process privilege, the government must still provide sufficient detail "to insure that the privilege remains a narrow privilege which is not indiscriminately invoked." *United States v. Rozet*, 183 F.R.D. 662, 665 (N.D. Cal. 1998).  Pifer's detailed declaration, in combination with the privilege log, meets that standard here.

5

writer rather than the policy of the agency." *Assembly of State of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992) (internal citation and quotation marks omitted). A document is deliberative if disclosure of the materials "would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.'" *Id.* at 921.

### a.   Pre-Decisional Documents

ILWU argues that DOL has not adequately articulated the "decision" for which the withheld documents are "pre-decisional." *See Maricopa II*, 108 F.3d at 1094 (stating that an agency claiming the privilege "must identify a specific decision to which the document is predecisional"). ILWU asserts that each decision must be identified at a granular level; thus, according to ILWU, DOL must identify the specific allegations to which each document relates, including "allegations ILWU denied members in Panama the right to vote by not extending their voting time, used an inaccurate voting list for one Panama affiliate, distributed incomplete voting instructions, or failed to issue replacement ballots once ILWU learned that a box of ballots was on its way to San Francisco." Mot. at 8. DOL responds that the law does not require the identification of a decision at ILWU's proposed level of specificity, and that all withheld documents relate to its decision "that there was probable cause to believe that violations of LMRDA occurred in connection with ILWU's election." Opp. at 10-11.

The court agrees with DOL's position, based on the Supreme Court's decision in *Sears*. In *Sears*, a FOIA plaintiff moved to compel disclosure of advice and appeals memoranda issued by the general counsel of the National Labor Relations Board ("NLRB"). The relevant documents were generated by NLRB's Office of the General Counsel "in the course of deciding whether or not to permit the filing with the Board of unfair labor practice complaints." 421 U.S. at 135-36. The Supreme Court distinguished between two types of memoranda requested: those that constituted the "final decision" of the NLRB to not permit the filing of a complaint and those that merely explain a decision to file a complaint and commence litigation in an ongoing matter. *See id.* at 148. In examining the applicability of FOIA's Exemption 5 to the former category of documents, the Court observed that "it is difficult to see how the quality of a decision will be affected by communications

6

with respect to the decision occurring after the decision is finally reached." *Id.* at 151; *see supra* n. 5 (discussing the relation between Exemption 5 and the deliberative process privilege). It accordingly found that "[d]isclosure of [the final decision] memoranda would not intrude on predecisional processes, and protecting them would not improve the quality of agency decisions." *Id.* at 155. By contrast, the Court held that the General Counsel's memoranda directing the filing of a complaint fall within the coverage of Exemption 5 because those documents relate to ongoing litigation and "will inexorably contain the General Counsel's theory of the case and may communicate to the Regional Director some litigation strategy or settlement advice."[5] *Id.* at 159-60. For purposes of analyzing ILWU's argument, the primary takeaway from *Sears* is that a decision to commence litigation is sufficiently specific to invoke the deliberative process privilege over pre-litigation investigative documents.[6] DOL's decision to file this case is equally specific.

In sum, ILWU's argument that DOL must identify each decision it made with respect to particular claims and allegations is not supported by the caselaw.

### b.    Deliberative Documents

In order for a document to be "deliberative" it should disclose the personal opinions or "mental processes of decision-makers." *California Native Plant Soc'y v. U.S. E.P.A.*, 251 F.R.D. at 413. Deliberative documents "reflect[] the give-and-take of the consultative process" and include documents that would "inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is as yet only a personal position." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). Examples of deliberative documents include "staff memoranda to senior agency officials with recommendations, legal interpretations

---

[5] The Court analogized this principle to the work product doctrine's protection of documents "prepared in anticipation of litigation," since it was clear that Congress intended to incorporate the doctrine into Exemption 5. As discussed below in the context of the work product doctrine, ILWU does not persuasively argue that any documents are unrelated to DOL's decision to file suit.

[6] ILWU's reliance on *United States ex rel. Poehling v. UnitedHealth Grp., Inc.* does not contradict this conclusion. *See* 2018 WL 8459926, at *13 (C.D. Cal. Dec. 14, 2018). In that case, the government did not identify any policy or decision to which its withheld documents related and instead only listed the general subject areas covered by the documents. Here, by contrast, DOL identifies its specific decision to pursue litigation against ILWU.

United States District Court
Northern District of California

1    and drafts of litigation documents," and "documents [that] reflect an agency's preliminary positions

2    about how to exercise discretion on a policy." *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir.

3    1993). Such documents may "weigh[] the pros and cons of agency adoption of one viewpoint or

4    another." *Coastal States Gas Corp.*, 617 F.2d at 866. They could contain advice, recommendations,

5    or suggestions from an inferior to a superior. *Maricopa II*, 108 F.3d at 1094. However, a final

6    decision-maker need not review every requested document so long as the information is part of the

7    decision-making process "as a whole." *Moye, O'Brien, O'Rourke, Hogan, & Pickert v. Nat'l R.R.*

8    *Passenger Corp.*, 376 F.3d 1270, 1279 (11th Cir. 2004) (finding that internal memoranda and audit

9    work papers were protected by the deliberative process because they were part of the "entire body

10   of collaborative work" performed by the agency); *see also Sears*, 421 U.S. at 150 (explaining that

11   the privilege protects "documents reflecting advisory opinions, recommendations and deliberations

12   comprising *part of a process* by which governmental decisions and policies are formulated" (internal

13   quotation marks and citation omitted)); *Sierra Club*, 925 F.3d at 1016 (documents "reflecting the

14   opinions of individuals or groups of employees rather than the position of an entire agency" are

15   deliberative).

16       ILWU argues that DOL has not met its burden to show that the withheld documents are

17   deliberative because its privilege log does not describe how each document played a role in making

18   the decision to file this lawsuit. *See California Native Plant Soc'y*, 251 F.R.D. at 413 ("[I]n order

19   to protect a document as "deliberative" under the deliberative process privilege, an agency must

20   show enough detail so that the court can determine how each document fits into the deliberative

21   process." (internal quotation marks and citation omitted)). ILWU lists examples of document

22   descriptions on DOL's privilege log that it contends are deficient, such as "Report of Investigation,"

23   and "OLMS deliberations regarding possible case theories." Mot. at 7; *see* Smith Decl., Ex. 28,

24   Privilege Log, lines 3 and 181. ILWU asserts that DOL withheld 82 documents under the

25   deliberative process privilege "for which DOL fails to describe the decision it was deliberating, and

26   the role of that document in its deliberation." Mot. at 7. DOL responds that Pifer's description of

27   the investigative process, in combination with the descriptions in the privilege log, adequately

28   apprise ILWU of the role each withheld document played in the deliberative process. Such

United States District Court
Northern District of California

documents include "various deliberative memoranda: the case opening memorandum, field investigator Diaz's election records review memorandum, Diaz's ROI and analysis and recommendation memoranda, supervisory investigator Michel's transmittal memorandum, the New York field office's ROI and records review memorandum regarding GES' election records, and CRLM attorneys' legal analysis," in addition to emails between investigators discussing how to proceed with the investigation, investigator notes, documents that assisted in organizing the investigation, and documents prepared in order to seek legal advice. Opp. at 11-12.

Many of the relevant privilege log entries explicitly state that they contain "recommendations," "analyses," or "assessments." *See, e.g.*, Privilege Log, lines 1-2, 5, 14, 28, 34-36, 45, 81, 94, 100, 150, 165, 312, 319. Others are less specific, including those identified by ILWU. *See, e.g.*, Privilege Log, lines 3 ("Report of Investigation"), 10 ("Deliberations relating to violations found"); 17 ("Redacted discussion regarding evidence"). Although a description like "Report of Investigation" is not specific on its own, Pifer's declaration details the ROI process as well as how the ROI was developed in this case. *See* First Pifer Decl. ¶¶ 9-11, 17. In relevant part, Pifer explains that field investigators prepare an ROI that outlines their "assessment of whether the evidence obtained would or would not support a possible finding of probable cause that a violation of the LMRDA occurred." *Id.* ¶ 9. The ROI concludes with a field investigator's recommendation to a supervisor, who then reviews the ROI and sends it to the Chief of the DOE with an explanation of the evidence and whether the supervisor agrees with the investigator's recommendation. *Id.* Pifer's declaration names the investigators involved with developing the ROI and how that report proceeded through the agency and contributed to the decision about whether to file this lawsuit. *Id.* ¶¶ 16-21. The privilege log entries relating to the ROI show that many of the documents in question were sent by lower-level employees to supervisors, which supports Pifer's account of the process. *See Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. U.S. Dep't of Justice*, 823 F.2d 574, 586 (D.C. Cir. 1987) ("[I]ntra-agency memoranda from 'subordinate' to 'superior' more likely to be deliberative in character than documents traveling in opposite direction."). ILWU appears to contend that Pifer's declaration is not sufficient because it does not analyze the privilege on a "document-by-document" basis. This argument is not convincing for the reasons laid out above.

9

See *Kasza*, 133 F.3d at 1169 (finding that an agency head "cannot reasonably be expected personally to explain why each item of information arguably responsive to a discovery request" is protected by executive privilege).  ILWU does not explain which part of the ROI process does not contain deliberations, analyses, and recommendations, or how the documents at issue do not relate to DOL's ultimate decision to file a complaint.  Thus, the privilege log description in combination with Pifer's declaration sufficiently establishes that at least portions of the ROI and its drafts contain deliberative material.[7]  *See California Native Plant Soc'y*, 251 F.R.D. at 413 ("[A] detailed declaration from senior agency staff, explaining how the withheld material fits into the decision-making process, can provide enough information to protect a document. . . .").

On the other hand, some of the descriptions in the privilege log are not sufficiently specific.  The document described at line 17 of the Privilege Log is titled "Email communication – Re: RE: Lazaro Salas" and described as a "Redacted discussion regarding evidence."  The description provides no information at all about how that email contributed to DOL's deliberative process.  Similarly, line 10 asserts that it relates to "Deliberations relating to violations found," but merely invoking the word "deliberations" does not establish that the document contains personal opinions or recommendations.  *See California Native Plant Soc'y* 251 F.R.D. at 413 (declarations from a senior agency official "generally attesting to the fact that the documents are deliberative and pre-decisional" were not sufficient because they "merely assert conclusory statements in a boilerplate format"); *Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm.*, 823 F.2d at 585, 589 (finding descriptions like "information pertaining to pre-decisional advice and recommendations" were inadequate).

In sum, some of DOL's descriptions are adequate and some are not.  Therefore, DOL is ordered to amend its log consistent with the analysis above.  DOL shall revisit each of the documents for which it claims the deliberative process privilege (not just the specific documents discussed above) to ensure that each document is described with adequate specificity.  In addition, or alternatively, DOL may file supplemental declarations establishing that the documents are properly

---

[7] The court addresses below whether such documents also contain segregable factual material that does not qualify for protection.

designated.  If DOL determines that a document should not have been withheld, it must immediately produce the document to ILWU.

### c.      Segregable Facts

While opinions are protected under the deliberative process privilege, "purely factual" material is not.  *F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) ("*Warner*"). However, factual material can still be protected if "its disclosure would reveal a decision-maker's mental process."  *California Native Plant Soc'y*, 251 F.R.D. at 413.  "To withhold documents containing factual information under the deliberative process privilege, the declarant must show that the factual information is intertwined with the author's opinions such that the facts and opinions cannot be practically separated."  *Poehling*, 2018 WL 8459926, at *14 (C.D. Cal. Dec. 14, 2018) (citing *Warner*, 742 F.2d at 1161).  It is the government's burden to establish that "all reasonably segregable portions of a document have been segregated and disclosed."  *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008).  The "key" to determining whether factual information is segregable is "whether revealing the information exposes the deliberative process." *Id.* at 921.

ILWU argues that DOL has not met its burden to show that certain factual material was properly withheld.  ILWU points specifically to timelines DOL has not produced, as well as memoranda and reports that "likely" contain factual material.  Mot. at 8.  For example, line 220 of the Privilege Log lists a document titled Timeline_ILWU_3-5-19.docx, which the Log describes as "OLMS compilation of facts in a timeline requested by and for the use of attorneys providing legal advice regarding probable cause that violations occurred."   The government does not appear to dispute that the timelines contain segregable factual material; it instead asserts that those documents are protected by the work product doctrine.  *See* Opp. at 15.  "The attorney work-product doctrine and deliberative process privileges . . . differ in important ways."  *Pac. Fisheries, Inc.*, 539 F.3d at 1148.  Relevant here, the work product doctrine does not automatically require disclosure of purely factual material.  *Id.*  DOL does not offer any rationale for withholding the timelines under the deliberative process privilege.  Thus, in its amended privilege log, DOL must withdraw its assertions of the deliberative process privilege over the timelines.  Whether those documents are protected by

the work product doctrine is discussed below.

ILWU also challenges DOL's withholding of "memoranda likely to contain a facts section," "investigative report[s] containing facts," and emails. Mot. at 8; Reply at 9.  ILWU's sole example of these reports and memos is the document listed at line 150 of the Privilege Log, titled Proposed Complaint and Legal Analysis to DOJ_3-121-2019.pdf, which is described as a "legal analysis of allegations, including recommendation whether to file suit and draft complaint prepared by the Office of the Solicitor, master version."  This is not ILWU's best example, since a draft complaint containing a recommendation to file suit falls squarely under the deliberative process privilege and it is not clear that such a document would contain segregable facts.  However, other items listed on the Privilege Log are more questionable.  Line 14 of the Privilege Log describes a "Case Opening Memorandum containing field inspector's initial assessment of the allegations in the union member complaint and potential relevant facts," a description that is repeated for other documents on the Log.  *See, e.g.*, Privilege Log lines 18, 27, 38, 81.  Other memoranda include the ROI, an analysis and recommendation memo, and a transmittal memo.  *See* Opp. at 16 n. 19; Privilege Log, lines 1 ("Memorandum reflecting whether supervisory investigator agrees or disagrees with field investigator's recommendation"), 2 ("Reflecting inspector's deliberations regarding whether the evidence gathered during the investigation supports a finding that there is probable cause to believe that the violation(s) occurred that may have affected the outcome of the election"), 3 ("Report of Investigation, final version").  DOL asserts that the factual portions of these documents are "so intertwined with deliberative materials that the factual portions are protected from disclosure as well."  Opp. at 15, 16.  Pifer testifies that "[t]he agency has attempted to release all reasonably segregable material in materials that it has withheld as part of the deliberative process relating to the probable cause determination for ILWU."  First Pifer Decl. ¶ 23.  DOL points out that it has released 32 exhibits to the ROI, interview reports, memoranda containing reviews of election records, and other record review memoranda, which demonstrates its efforts to disclose all reasonably segregable factual material.  *Id.*

DOL must do more to support the basis for withholding facts contained in documents. An agency can meet its burden in the segregable facts analysis "by offering an affidavit with reasonably

detailed descriptions of the withheld portions of the documents and alleging facts sufficient to establish an exemption." *Pac. Fisheries, Inc.*, 539 F.3d at 1148. The affidavit should disclose "as much information as possible without thwarting" the purpose of the deliberative process privilege. *See id.* (internal quotation marks and citation omitted). Pifer's declaration does not meet this standard. He testifies as to the general content of the withheld documents but does not explain why the material does not contain segregable facts. *See* First Pifer Decl. ¶ 22. While these assertions are enough to determine that portions of the documents are properly withheld, it is impossible to tell from either Pifer's declaration or the privilege log whether the described memoranda and reports contain, for example, a facts section that is not intertwined with analysis. *Kowack v. U.S. Forest Serv.*, 766 F.3d 1130, 1135 (9th Cir. 2014) ("A stand-alone fact section, for example, could likely be disclosed without revealing the agency's deliberative process, while isolated facts embedded within a subordinate's explanation of why the allegations were meritless may not be.").

Because DOL has failed to meet its burden to show that it has disclosed all reasonably segregable factual material in its reports, it must either (1) amend its log to remove the relevant assertions of deliberative process privilege and produce documents or portions of documents that are not otherwise privileged or (2) submit declarations that detail why the factual material in such documents is not reasonably segregable.

### d. Adopted Recommendations

A document that is pre-decisional may "lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *United States v. Rozet*, 183 F.R.D. 662, 666 (N.D. Cal. 1998). ILWU argues that DOL is now obligated to disclose the recommendations and analyses it ultimately adopted by filing suit, since DOL's allegations in this case are a "final decision." Mot. at 10. ILWU does not offer any authority that an agency's decision to file a lawsuit is a "final adopted policy" such that the recommendations supporting that decision must be disclosed. In fact, *Sears* (the only case cited by ILWU) explicitly states the opposite. *See Sears*, 421 U.S. at 150 ("Advice and Appeals Memoranda which direct the filing of a complaint, on the other hand, fall within the coverage of Exemption 5. The filing of a complaint does not finally dispose even of the General Counsel's responsibility with

13

respect to the case."); *see also Heggestad v. U.S. Dep't of Justice*, 182 F. Supp. 2d 1, 9 (D.D.C. 2000) ("In this case, the prosecution memoranda at issue were not the final disposition of the case, because a decision was subsequently made to prosecute and the prosecution did in fact occur.").

Therefore, DOL's deliberative documents did not lose protection of the deliberative process privilege simply because DOL chose to file suit.[8]

### e.   Undistributed Files

Some of the documents at issue were not distributed within the DOL or presented to a final-decision-maker.  These include documents that an investigator "saved to file" or sent to herself.  For example, some investigators saved files with titles "Notes on Conference Call w AUSA Kim Robinson_4-12-19.docx" (line 201), "Interview Qs_Familathe_2-26-19.docx" (line 206), and "Notes_12-7-18 and beyond_convos w field.docx" (line 211).  ILWU argues that these items are not protected by the deliberative process privilege because they were not used to recommend action to a superior or even viewed by a supervisor.  The court disagrees that any undistributed file is automatically unprotected.  "Applying a commonsense approach, courts have found agency employee's handwritten notes directed 'to file' to be privileged under Exemption Five. It would be an anomalous result to exempt memoranda that have circulated within the agency and yet force disclosure of the handwritten notes used to prepare those same memoranda." *Conoco Inc. v. U.S. Dep't of Justice*, 687 F.2d 724, 728 (3d Cir. 1982) (internal citations omitted).  However, undistributed files must still meet the requirements of the deliberative process privilege, as described above.  It is not clear from the privilege log how the identified files fit into the deliberative process or whether all segregable factual material has been disclosed.  Pifer's declaration also does not discuss any of these files and it is not clear that he would have personal knowledge of an investigator's private notes.  There is no declaration from the investigator herself about what these documents contain or how they contributed to the deliberative process.

---

[8] ILWU also seems to argue that five documents created by DOL after the commencement of litigation are not "pre-decisional" because they occurred after DOL decided to file suit.  This argument is similarly unconvincing.  In addition to deciding to file suit, DOL also decided to amend its complaint.  The documents are pre-decisional with respect to that decision because that determination occurred during litigation before a "final disposition" of the case.  *See Heggestad*, 182 F. Supp. 2d at 9.

1    Accordingly, DOL must revisit these documents following the same standards the court set

2    above with respect to identifying deliberative material and segregable facts.

3                    **3.        Waiver of Privilege**

4    The deliberative process privilege is not absolute.  *Warner*, 742 F.2d at 1161.  "A litigant

5    may obtain deliberative materials if his or her need for the materials and the need for accurate fact-

6    finding override the government's interest in non-disclosure."  *Id.*  It is the requesting party's burden

7    "to show that the privilege should be waived in the instant case."  *California Native Plant Soc.*, 251

8    F.R.D. at 415.  To determine whether waiver should occur, a court should consider "1) the relevance

9    of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and

10   4) the extent to which disclosure would hinder frank and independent discussion regarding

11   contemplated policies and decisions."  *Warner*, 742 F.2d at 1161.

12   ILWU argues that its need for the requested documents exceeds DOL's interest in

13   withholding them.  This argument is unavailing.  First, ILWU says nothing specific about the

14   relevance of the documents sought and instead offers conclusory assertions such as: "[the

15   documents] are central to providing ILWU with materials relevant to several defenses, including its

16   unclean hands defense," "documents about DOL's count process [are] relevant to ILWU's defense

17   and proportional to the needs of the case," and "complete information about how DOL conducted

18   its investigation and came to its conclusions are . . . highly relevant to ILWU's defenses."  Mot. at

19   1, 15; Reply at 12.  These assertions explain nothing about what ILWU expects the documents to

20   show or how that information is not available from other sources, including its own discovery and

21   investigation and the documents already produced by DOL. *See Farley*, 11 F.3d at 1389–90 (finding

22   a litigant's claim that the documents sought were "relevant and generally important to his

23   affirmative defenses" was an "insufficient reason for breaching the deliberative process privilege").

24   Therefore, the first and second factors weigh in favor of DOL.  The fourth factor also weighs against

25   disclosure since the court has already found that disclosure of the documents would reveal DOL's

26   "contemplated . . . decisions."  *Warner*, 742 F.2d at 1161.  While the third factor weighs in ILWU's

27   favor because the government is a party to this action, the balance of factors do not support waiver

28   of the deliberative process privilege.

United States District Court
Northern District of California

United States District Court
Northern District of California

1     According, ILWU fails to meet its burden to show that its need for the documents outweighs

2     the government's interests in withholding them.

3          **B.     Government Investigatory Privilege**

4          "There is a qualified investigatory privilege for informal deliberations of prosecutorial

5     agencies and branches of government." *Valley Surgical Ctr. v. Cty. of Los Angeles*, 2017 WL

6     10574239, at *4 (C.D. Cal. Sept. 22, 2017) (citing *N.L.R.B. v. Silver Spur Casino*, 623 F.2d 571,

7     580 (9th Cir. 1980)).  This privilege has been variously referred to as the "investigatory privilege,"

8     the "law enforcement privilege," the "federal investigatory privilege," and the "official information

9     privilege."  *Silver Spur Casino*, 632 F.2d at 580; *Perez v. Guardian Roofing LLC*, 2016 WL

10    1408027, at *3 (W.D. Wash. Apr. 11, 2016); *Brooks v. Cty. of San Joaquin*, 275 F.R.D. 528, 532

11    (E.D. Cal. 2011).  The privilege "preserves the confidentiality of investigative files and applies to

12    informal investigatory material and preliminary determinations." *Solis v. Seafood Peddler of San*

13    *Rafael, Inc.*, Case No. 12-cv-0116 PJH (NC), 2012 WL 12547592, at *6 (N.D. Cal. Oct. 16, 2012);

14    *see also Tuite v. Henry*, 181 F.R.D. 175, 176 (D.D.C. 1998), *aff'd*, 203 F.3d 53 (D.C. Cir. 1999)

15    ("The federal law enforcement privilege is a qualified privilege designed to prevent disclosure of

16    information that would be contrary to the public interest in the effective functioning of law

17    enforcement.").  The privilege is "exclusive to the government" and must be invoked through a

18    "formal claim of privilege" by a responsible government official . . . after actual personal

19    consideration of the information sought." *U.S. ex rel. Burroughs v. DeNardi Corp.*, 167 F.R.D. 680,

20    687 (S.D. Cal. 1996).  Further, the privilege claim "must specify with particularity the information

21    for which the protection is sought, and explain why the information falls within the scope of the

22    privilege." *Id.*  "The party asserting the investigatory privilege has the burden to establish its

23    existence." *Valley Surgical Ctr.*, 2017 WL 10574239, at *4.

24         At issue here are four documents DOL withheld under what it refers to as "the investigatory

25    files privilege."[9]  Three of these relate to DOL's ballot-counting method.[10]  *See* Privilege Log, lines

26    —————————————

27    [9] It is clear that DOL is asserting the same privilege explained above, which the court will refer to
      here as the "government investigatory privilege."

28    [10] Neither party explains the "ballot-counting method" in detail, but it appears to relate to how DOL

1    46, 47, 87.  The fourth file is an "administrative case evaluation worksheet, . . . which is a tool used

2    to evaluate the field investigator's report of investigation and analysis and recommendation

3    memorandum." Opp. at 21-22; Privilege Log, line 329.  At the hearing, the parties agreed to produce

4    these documents under the protective order in this case, with an Attorneys' Eyes Only designation.

5         Accordingly, DOL shall produce the documents at lines 46, 47, 87, and 329 subject to the

6    parties' protective order.

7         **C.    Attorney-Client Privilege**

8         The attorney-client privilege protects from discovery "confidential communications between

9    attorneys and clients, which are made for the purpose of giving legal advice." *United States v.*

10   *Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citation omitted); *see Vasudevan Software, Inc. v. IBM*

11   *Corp.*, Case No. 09-cv-5897-RS (PSG), 2011 WL 1599646, at * 1 (N.D. Cal. Apr. 27, 2011).  The

12   privilege attaches when (1) legal advice of any kind is sought (2) from a professional legal adviser

13   in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5)

14   by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the

15   legal adviser, (8) unless the protection be waived.  *Richey*, 632 F.3d at 566 (brackets, citation, and

16   quotation marks omitted).

17        Attorney-client privilege is "narrowly and strictly construed," and the party asserting it bears

18   the burden of proving that it applies.  *Vasudevan Software, Inc.*, 2011 WL 1599646, at *1 (footnotes

19   and quotation marks omitted); *accord United States v. Bergonzi*, 216 F.R.D. 487, 493 (N.D. Cal.

20   2003) (holding that party asserting privilege "must make a prima facie showing" that privilege

21   applies) (citing *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992)); *see Richey*,

22   632 F.3d at 566.  The privilege protects only communications, and not underlying facts. *Upjohn v.*

23   *United States*, 449 U.S. 383, 396  (1981) (finding that a party "may not refuse to disclose any

24   relevant fact within his knowledge merely because he incorporated a statement of such fact into his

25   communication to his attorney") (citations omitted).

26        ILWU moves to compel 21 documents that DOL withheld on the basis of attorney-client

27   _____

28   determined that 608 due-paying members of the Panamanian locals were not sent ballots.  *See* Mot.
     at 16.

17

1   privilege.  It argues that the documents are emails sent between DOL employees, none of whom are

2   attorneys, and thus the attorney-client privilege does not apply.  DOL responds that communications

3   between non-attorneys are protected by attorney-client privilege when they relay or discuss legal

4   advice.  This court examined attorney-client privilege with respect to non-attorney employees in

5   *Dolby Labs. Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855 (N.D. Cal. 2019) (Ryu, J.).  There,

6   the court explained that attorney-client privilege attaches to communications between non-attorney

7   employees where "(1) the employees discuss or transmit legal advice given by counsel; and (2) an

8   employee discusses her intent to seek legal advice about a particular issue."  *Id.* at 866 (quoting

9   *Datel Holdings Ltd. v. Microsoft Corp.*, Case No. 09-cv-05535 EDL, 2011 WL 866993, at *5 (N.D.

10  Cal. Mar. 11, 2011)).  The court also noted that a "vague declaration that states only that the

11  document 'reflects' an attorney's advice is insufficient to demonstrate that the document should be

12  found privileged."  *Id.* at 866 (quoting *Hynix Semiconductor Inc. v. Rambus Inc.*, Case No. 00-cv-

13  20905-RMW, 2008 WL 350641, at *3 (N.D. Cal. Feb. 2, 2008)).  Under this standard, DOL's

14  showing is patently insufficient.  The Privilege Log includes vague, general statements such as

15  "Redacted exchange reflecting attorney-client communications" (lines 83-85), "Redacted attorney

16  questions and client response" (line 163), "Attorney question regarding evidentiary record and legal

17  strategy and OLMS response" (line 187), and "Communication in response to attorney

18  communication" (line 233).  DOL submitted no attorney declarations attesting that these documents

19  contain their legal advice or declarations from the participating employees that they were drafted

20  with the purpose of seeking legal advice.  *See Dolby Labs. Licensing Corp.*, 402 F. Supp. 3d at 865

21  ("[A]ttorney declarations generally are necessary to support the designating party's position in a

22  dispute about attorney-client privilege."); *Datel Holdings Ltd.*, 2011 WL 866993, at *5 (holding that

23  attorney-client privilege did not protect communications between employees where there was "no

24  showing that the results of the investigation were ever conveyed to counsel"); *Oracle Am., Inc. v.

25  Google, Inc.*, No. 10-cv-03561-WHA (DMR), 2011 WL 3794892, at *3 (N.D. Cal. Aug. 26, 2011)

26  (finding an attorney's affidavit insufficient to establish privilege where the attorney did not testify

27  that the document was "connected to the work he requested . . . as part of the provision of legal

28  advice he describes in his declaration.").  It is unclear, for example, whether the "attorney questions"

18

United States District Court
Northern District of California

1   referenced are forwarded from attorneys, relayed based on conversations with counsel, or came from

2   a different source. There is no indication of the subject matter about which legal advice was provided

3   or sought.

4          In sum, DOL's summary descriptions do not establish that the documents in question relay

5   legal advice from attorneys or discuss employees' intent to seek legal advice.  Therefore, DOL must

6   submit declarations supporting that the communications in question meet the standard set forth in

7   *Dolby Labs. Licensing Corp.*

8          **D.     Attorney Work Product**

9          The work product doctrine protects from discovery "materials prepared by an attorney in

10  anticipation of litigation," be they "by or for the attorney."  *United States v. Bergonzi*, 216 F.R.D.

11  487, 494 (2003) (citations omitted); *accord United States v. Richey*, 632 F.3d 559, 567 (9th Cir.

12  2011).  It aims to balance the "promotion of an attorney's preparation in representing a client" and

13  "society's general interest in revealing all true and material facts to the resolution of a dispute."  *In*

14  *re Seagate Tech., LLC*, 497 F.3d 1360, 1375 (Fed. Cir. 2007) (citation and quotation marks omitted),

15  *abrogated on other grounds by Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S.Ct. 1923

16  (2016).  To qualify for work-product protection, materials must "(1) be prepared in anticipation of

17  litigation or for trial and (2) be prepared by or for another party or by or for that other party's

18  representative."  *Richey*, 632 F.3d at 567 (citation and quotation marks omitted).  When a document

19  was not prepared exclusively for litigation, it will receive protection if "in light of the nature of the

20  document and the factual situation in the particular case, the document can be fairly said to have

21  been prepared or obtained because of the prospect of litigation."  *Id.* at 568 (citation and quotation

22  marks omitted).  This analysis requires the court to examine the totality of the circumstances and

23  determine whether the document was prepared in anticipation of litigation and "would not have been

24  created in substantially similar form but for the prospect of litigation."  *Id.*  (citation and quotation

25  marks omitted).

26         Unlike the attorney-client privilege, the work product doctrine may be overcome by a party's

27  showing of "need and undue hardship."  *In re Seagate Tech., LLC*, 497 F.3d at 1375 (citing Fed. R.

28  Civ. P. 26(b)(3)). The degree of showing required, however, depends on whether the sought-after

1   material "is factual, or the result of mental processes such as plans, strategies, tactics, and

2   impressions, whether memorialized in writing or not." *Id.* (citations omitted). Factual materials

3   simply require a demonstration of "substantial need and undue hardship," while materials reflecting

4   mental processes receive greater, "nearly absolute" protection. *Id.* (citations omitted).

5        ILWU challenges DOL's assertion of work product protection over several documents.

6   However, the rationales for its challenges are unsupported. First, ILWU argues that DOL did not

7   assert work product protection over these documents in its prior privilege logs.[11] By itself, DOL's

8   alleged inconsistent assertions of privilege in prior versions of the privilege log does not raise an

9   inference that work product protection does not apply. Second, ILWU asserts that documents

10   prepared "in the ordinary course of business" are not protected by work product doctrine but does

11   not point to any documents on the Privilege Log that appear to be ordinary business documents. For

12   example, ILWU points to documents titled "Interview Qs_Familathe_2-26-19.docx" and

13   "Timeline_ILWU_2-20-19.docx" but does not explain why it believes DOL would generate such

14   documents in the ordinary course of business. Mot. at 22. Pifer's declaration lays out the history

15   of the investigation into ILWU's 2018 election, the investigation DOL performed in response to a

16   complaint about the election, and DOL's decision to file this lawsuit based on its findings. This

17   unrebutted testimony is sufficient to show that the documents were prepared in anticipation of

18   litigation. Finally, ILWU appears to argue that DOL should have produced "segregable facts"

19   contained in its work product. This argument conflates work product protection with the

20   deliberative process privilege. While the former requires production of segregable factual material,

21   the latter does not. *See Pac. Fisheries, Inc.*, 539 F.3d at 1148. Unlike the deliberative process

22   privilege, the work product doctrine does not require disclosure of purely factual material absent a

23   showing of need. *Id.*

24        Because ILWU has not raised an inference that DOL's assertions of work product protection

25   are inappropriate, the court denies ILWU's motion to compel these documents.

26

27   _____

28   [11] ILWU does not argue that DOL waived the privilege by failing to assert it in prior versions of the log.

## IV.     CONCLUSION

For the reasons stated above, the court grants in part and denies in part ILWU's motion to compel.  By December 9, 2020, DOL shall: (1) amend its privilege log and/or submit additional declarations establishing that documents withheld under the deliberative process privilege are properly designated; (2) produce the four documents identified above that were withheld on the basis of the government investigatory privilege, subject to an AEO designation under the parties' protective order; (3) submit declarations supporting the communications between non-attorney employees are properly protected under attorney-client privilege; and (4) remove any improperly asserted privileges and/or produce any documents improperly withheld, consistent with the directions set forth above.  DOL shall file its amended privilege log and any supplemental declarations by the same date.  By December 16, 2020, ILWU may file objections to specific documents (not categories) and explain how those entries do not comply with this order.  DOL may file a response by December 23, 2020.  Neither party shall offer further legal argument.

ILWU's motion is otherwise denied.

**IT IS SO ORDERED.**

Dated: November 18, 2020



Donna M. Ryu
United States Magistrate Judge

United States District Court
Northern District of California